IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CHRISTOPHER LOUIS, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PX-16-1471 |
| CITY OF ROCKVILLE, *et al.*, | * | |
| Defendants. | ****** | |

Pending before the Court in this employment discrimination action is the Motion for Summary Judgment filed by Defendants City of Rockville, Maryland (the "City") and Terry N. Treschuk ("Treschuk"), the City's former Chief of Police. (ECF No. 28.) The matter has been fully briefed and no hearing is necessary. *See* D. Md. Loc. R. 105.6. Upon consideration of the parties' arguments and the evidence in the record, the Court GRANTS Defendants' motion.

**I.      BACKGROUND**

Plaintiff Christopher Louis ("Louis") was hired by Defendants as a sworn police officer in 1996. ECF No. 28-2 at 4, 10–11 (Louis Dep. 14:8–11, 40:20–41:7). In 2001, Louis was promoted to corporal. ECF No. 28-2 at 6 (Louis Dep. 21:15–23:12). Treschuk was the Chief of Police at the time Louis was hired, and remained Chief until June of 2016. ECF No. 28-3 at (Treschuk Dep. 7:13; 6:19–20); ECF No. 28-2 at 5 (Louis Dep. 18:1–12). This case arises from

Treschuk's decision in August 2014 not to promote Louis from corporal to sergeant. The facts that follow are taken from the record and construed in the light most favorable to Louis.[1]

The process for promotion from corporal to sergeant in the Rockville Police Department (the "Department") involves a written and an oral exam. The written exam is administered and scored by the Rockville Human Resources Department ("HR"). *See* ECF No. 33-11 at 8 (Merritt Dep. 24:3–11). The oral exam is evaluated by a board of outside individuals with law enforcement experience who orally pose predetermined questions to the applicants. Each board member evaluates the applicants' oral responses using the following criteria: "surface impression" (including appearance, maturity, and ease of manner), "mental effectiveness" (including alertness and expression of ideas), knowledge of administrative and operating procedure, skill at handling interpersonal relationships, and knowledge and interest in the field. ECF No. 33-11 at 8 (Merritt Dep. 24:12–18); ECF No. 28-3 at 3–5 (Treschuk Dep. 11:16–17:17); ECF No. 33-36 at 2–3 (reflecting notes from Louis' oral examination). The scores for the oral and written examinations are combined and used to generate a promotion eligibility list that ranks the candidates based on their overall scores. ECF No. 28-3 at 6 (Treschuk Dep. 22:1–23:20); ECF No. 28-8 at 4. The promotion eligibility list is valid for one year, with an option for the Chief of Police to extend the list for an additional six months. ECF No. 28-8 at 4.

When filling a vacancy, Rockville Police General Orders allow the Chief of Police to promote any of the three top-ranked candidates on the eligibility list, considering "the needs of the community, the City, the Department, and the applicant's overall qualification, past performance, and potential for future development." ECF No. 28-8 at 3. This discretion of the Chief in promoting any of the top three candidates is known as the "Rule of Three." Although

---

[1] Although some of the evidence in the record is included in exhibits filed under seal, the Court's Memorandum Opinion refers only to the information that the parties have freely discussed in their summary judgment pleadings or that was included in other exhibits that were not sealed.

the Rule of Three exists, it is rarely used. Typically, the Chief promotes based on the order in which the candidates are ranked. Chief Treschuk invoked the Rule of Three on two occasions: once, to pass over Corporal George Day, a Caucasian man, because Day lacked adequate supervisory experience; the second time was to pass over Louis. ECF No. 28-3 at 11–12 (Treschuk Dep. 44:5–45:14); ECF No. 3-10 at 7, 8 (Rawlins Dep. 19:17–20:20, 22:14–23:7). Both times, the passed-over candidates were informed that they would be promoted at the next vacancy. *See* ECF No. 29-8; ECF No. 28-3 at 16–17 (Treschuk Dep. 63:15–65:5). Louis was eventually promoted to sergeant in April of 2017.

Treschuk's 2014 decision to pass over Louis for promotion to sergeant was based in part on two previous Internal Affairs ("IA") investigations involving Louis' billing practices for his overtime work at the Regal Theaters in Rockville Town Center ("Regal"). The first, in 2011, concerned allegations that Louis submitted inflated payroll invoices for his Regal overtime work. ECF No. 29-1 at 1. Lieutenant Alan Rawlins, an African American employee of the Department and friend and mentor to Louis, *see* ECF No. 28-2 at 21 (Louis Dep. 83:21–84:18), investigated the 2011 complaint and determined that on several occasions, Louis had claimed overtime wages in his payroll submissions for hours he had not worked and for which he was not entitled to request payment. As a result, Rawlins submitted to Treschuk three allegations that Rawlins' investigation had "sustained." ECF No. 29-1 at 2–3.[2]

Treschuk, in his review of Rawlins' findings, ultimately pursued only two charges, Performance of Duty and Conduct Unbecoming of an Officer. ECF No. 29-1 at 16–17.

---

[2] As part of his investigation into the 2011 Regal complaint, Rawlins also investigated Louis' assertion that other police officers had similarly overbilled for overtime work at Regal but had not been punished for the misconduct. Rawlins determined that the other officers had been given permission to leave early from duty, entitling them to bill for the full period of overtime, while Louis had left without authorization. *See* ECF No. 29-1 at 8–13; ECF No. 33-10 at 31 (Rawlins Dep. 116:12–117:6).

Treschuk dropped the third allegation, False Reports and Entries, because it would have rendered Louis ineligible to serve as a sworn police officer in Maryland. ECF No. 28-3 at 17 (Treschuk Dep. 68:17–21). Louis did not contest the underlying facts of these charges and accepted punishment without a further hearing. ECF No. 29-1 at 19.

In 2013, Louis again was accused of improperly billing for his overtime work at Regal. In summary, this dispute appeared to involve Louis claiming he would be delayed arriving to the Regal by a few minutes due to inclement weather, but then actually using that time to pick up his police vehicle from a repair shop. Louis arrived to Regal approximately an hour and a half late, and then left before the end of his scheduled shift to pick up his personal vehicle. Then-Sergeant Brian Paul had assisted Louis in picking up his police vehicle, and Sergeant Andy Crawford assisted Louis in retrieving his personal vehicle later that night. The two sergeants were concerned that Louis had not worked his full hours at Regal, so Paul contacted Regal management, who investigated the matter further, determined that Louis had not worked his full shift, and requested to make a complaint against Louis.[3] ECF No. 29-2 at 1, 8, 11; *see* ECF No. 33-7 at 23 (Paul Dep. 85:18–21); ECF No. 29-2 at 2, 3–5. Paul reported this incident to Lieutenant Eric Over. *See* ECF No. 33-7 at 23 (Paul Dep. 84:15–85:17). Over then informed Paul that if Regal management wished to initiate a complaint against Louis, Regal would have to submit a complaint in writing. Regal employee Liz Columber did so. *See* ECF No. 29-2 at 1.

Then-Commander Robert Rappoport investigated the 2013 complaint, initially sustaining three allegations: "Reporting to Duty," "Conduct Unbecoming an Officer," and "False Reports and Entries." *See* ECF No. 29-2 at 6–7. During this investigation, Rappoport added a fourth allegation for "Untruthful Responses" because Rappoport believed that Louis was not candid

---

[3] It is the responsibility of any employee of the Department to report a policy violation. *See* ECF No. 33-16 at 13 (Rappoport Dep. 45:16–19).

during a related interview. ECF No. 29-2 at 20. Chief Treschuk did not pursue the Untruthful Responses allegation, but did formally charge Louis with the other violations. ECF No. 29-2 at 24. Louis, through counsel, negotiated admissions to the violations of Reporting to Duty and Conduct Unbecoming an Officer, and accepted punishment without contesting the underlying facts. *See* ECF No. 29-2 at 28; ECF No. 28-3 at 18–19 (Treschuk Dep. 72:9–73:9).

While the 2013 Regal IA investigation was ongoing, Louis learned about a comment left in an informal "suggestion box," which read as follows:

> DON'T MAKE CHRIS LOUIS A SGT THAT IS THE BIGGEST MISTAKE THIS DEPARTMENT CAN MAKE. HE IS AN AWFUL POLICE. A REALLY BAD OIC AND A BAD FTO. LOOK AT THE PEOPLE THAT HE HAS PASSED. NONE CAN DO POLICE WORK OR HAVE ANY OFFICER SAFETY. HOW CAN YOU PROMOTE SOMEONE THAT STEALS FROM THE DEPARTMENT AND BRAGS ABOUT IT.[4]

ECF No. 34-7 at 2. Because of this note and other verbal comments that Louis had received, Louis filed an internal complaint of harassment and race discrimination on April 1, 2013. *See generally* ECF No. 34-6. Major Michael England investigated Louis' complaint, but did not substantiate the allegations. ECF No. 34-18 at 2. The investigation closed on September 18, 2013. ECF No. 34-18 at 2.

On September 28, 2013, Louis applied for promotion to sergeant. *See* ECF No. 33-34 at 2. After completion of both the written and oral portions of the exam, Louis was ranked second on the promotion eligibility list. ECF 33-35 at 2. When the first vacancy arose, Treschuk promoted the highest-ranked candidate, leaving Louis at the top of the list. In July 2014, when Treschuk was deciding who to promote for the next vacancy, he requested feedback from England, Over, and then-Lieutenant Paul on Louis' candidacy. Each expressed varying degrees of concern with Louis' supervisory and communication skills. *See generally* ECF No. 33-30.

---

[4] Although Louis believes that Paul is responsible for the note, no evidence in the record supports this conclusion.

Treschuk exercised his discretion under the Rule of Three and promoted the second-ranked candidate, Jan Seilhamer, a Caucasian woman, over Louis. Treschuk and England then met with Louis to discuss Treschuk's decision. Treschuk explained that Louis' "history and performance left some concern and questions as to whether or not this [was] the right time to promote [him] to Sergeant." ECF No. 33-38 at 2. They discussed particularly Louis' supposed failure to respond to a serious service call in favor of writing traffic citations, a concern England had previously raised to Treschuk. *See* ECF No. 33-38 at 2–3; ECF No. 33-30 at 2–3. Treschuk also mentioned issues Louis had at the "Town Center." ECF No. 28-2 at 54 (Louis Dep. 214:4–16). Treschuk informed Louis that if he continued to perform well, he would be promoted next. ECF No. 28-2 at 53 (Louis Dep. 210:20–211:4). Louis was in fact promoted to sergeant in April of 2017 by then-Acting Chief Rappoport. ECF No. 33-13 at 2.

After Louis was passed over for promotion in 2014, he formally complained to HR, alleging that Treschuk's decision was motivated by race and by retaliation for Louis' 2013 harassment complaint. ECF No. 33-37. HR concluded that Treschuk had not discriminated against Louis, but recommended that Louis be provided with written feedback identifying deficiencies with his supervisory performance. HR also recommended that the Department extend the 2013 promotion eligibility list until July 2015. ECF No. 33-37 at 4. Neither remedial action was taken. ECF No. 33-43 at 8.

Louis thereafter filed suit in this Court,[5] alleging race discrimination in violation of the Maryland Human Relations Commission Act, MD State Government, Code § 20-601 *et seq.*; the Rockville City Code 11-1 *et seq.* via the Maryland Human Relations Commission Act, MD State

---

[5] Before bringing suit in this Court, Louis filed a complaint with the EEOC. ECF No. 33-43. From the EEOC records submitted by the parties, it appears that EEOC found probable cause to believe that Treschuk passed over Louis in retaliation for Louis filing his 2013 harassment internal complaint, but found insufficient evidence to sustain a claim of race discrimination. ECF No. 33-43 at 10–11.

6

Government, Code § 20-1202; Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*; and the Civil Rights Act of 1866, 42 U.S.C. § 1981 (Counts I, III, V, and VII). Louis also brings claims of retaliation under the Maryland Human Relations Commission Act, the Rockville City Code, and Title VII (Counts II, IV, and VI); and a claim under 42 U.S.C. § 1983 for violation of his rights under the Equal Protection clause of the United States Constitution (Count VIII). ECF No. 1 ¶¶ 84–143. Defendants moved for summary judgment on all counts, contending that Louis has failed to generate sufficient evidence to sustain his claims. ECF No. 28-1 at 10. For the following reasons, the Court grants summary judgment in Defendants' favor.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the Court, construing all evidence and drawing all reasonable inferences in the light most favorable to the non-moving party, finds no genuine dispute exists as to any material fact, thereby entitling the movant to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see In re Family Dollar FLSA Litig.*, 637 F.3d 508, 512 (4th Cir. 2011). Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In responding to a proper motion for summary judgment, the party opposing summary judgment must present evidence of specific facts from which the finder of fact could reasonably find for him or her." *Venugopal v. Shire Labs.*, 334 F. Supp. 2d 835, 840 (D. Md. 2004), *aff'd sub nom. Venugopal v. Shire Labs., Inc.*, 134 F. App'x 627 (4th Cir. 2005) (citing *Anderson v. Liberty Lobby,* 477 U.S. 242, 252 (1986); *Celotex,* 477 U.S. at 322–23). The party opposing summary judgment "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th

Cir. 2008) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)). Where a party's statement of a fact is "blatantly contradicted by the record, so that no reasonable jury could believe it," the Court will credit the record over the averred fact. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. DISCUSSION

#### A. Counts I, III, V, and VII, Discriminatory Failure to Promote

Because Louis has not marshalled any direct evidence of discrimination, his failure-to-promote claims are subject to the burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 278 (4th Cir. 2000); *see also Weathersbee v. Baltimore City Fire Dep't*, 970 F. Supp. 2d 418, 430 (D. Md. 2013); *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005); *Haas v. Lockheed Martin Corp.*, 396 Md. 469, 482 & n.8 (2007); *Davenport v. Maryland*, 38 F. Supp. 3d 679, 690 (D. Md. 2014). Under this framework, Louis initially must establish a *prima facie* case of discrimination by demonstrating that he is a member of a protected group who applied for a promotion for which he was qualified, and the Defendants failed to promote him under circumstances that give rise to an inference of unlawful discrimination. *See Anderson*, 406 F.3d at 268. If Louis establishes this *prima facie* case, the burden shifts to Defendants to offer a legitimate, non-discriminatory reason for failing to promote him. *Id.* If Defendants provide such a reason, the burden then shifts back to Louis to raise a genuine issue of material fact as to whether Defendants' proffered reason is a mere pretext for discrimination. *Id.*; *Holley v. N.C. Dept. of Admin.*, 846 F. Supp. 2d 416, 428–29 (E.D.N.C. 2012). Although the framework "involves a shifting back and forth of the evidentiary burden, Plaintiff, at all times, retains the ultimate burden of persuading the trier of fact that the employer discriminated in violation of

Title VII." *Venugopal*, 334 F. Supp. 2d at 841. "The crucial issue in a Title VII action is an unlawfully discriminatory motive for a defendant's conduct, not the wisdom or folly of its business judgment." *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 383 (4th Cir. 1995); *see also Propst v. HWS Co., Inc.*, 148 F. Supp. 3d 506, 528 (W.D.N.C. 2015) ("[I]t is not the Court's province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for" the non-promotion) (quoting *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)) (internal alterations omitted).

Defendants argue that Louis has failed to establish his *prima facie* case because his non-promotion did not occur in circumstances giving rise to an inference of unlawful discrimination. In failure-to-promote cases, a plaintiff generally satisfies his burden on this element when he shows that the open position was filled by a person outside of the plaintiff's protected group. *Gbenoba v. Montgomery Cty. Dep't of Health & Human Servs.*, 209 F. Supp. 2d 572, 576 (D. Md. 2002), *aff'd*, 57 F. App'x 572 (4th Cir. 2003). Here, Louis has made that showing.

The Court next considers whether the evidence in the record creates a genuine issue of disputed fact as to whether Treschuk's stated reasons for not promoting Louis are genuine or pretextual. Louis may demonstrate the existence of a genuine dispute by showing that Treschuk's stated reasons are not credible, or through other circumstantial evidence sufficiently probative of intentional discrimination. *See Dugan v. Albermarle Cty. Sch. Bd.*, 293 F.3d 716, 721 (4th Cir. 2002).

As an initial matter, the Court recognizes the "powerful inference" that because Treschuk *hired* Louis, Treschuk's failure to promote Louis was not motivated by discriminatory animus. *See Venugopal*, 334 F. Supp. 2d at 844 (citing *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996)). Additionally, Treschuk testified that he did not promote Louis

9

because of Louis' "history and performance," namely the overbilling incidents and concerns regarding his supervisory skills. *See* ECF No. 28-1 at 31, 33–34; ECF No. 33-38 at 2; *see also* ECF No. 28-2 at 53–54 (Louis Dep. 212:3–214:9) (detailing that Treschuk told Louis that he "had to prove [himself] to other officers because of the incidents at Town Center."). Treschuk's concerns about Louis are memorialized in contemporaneous memoranda, further supporting the inference that the decision not to promote Louis was grounded in legitimate, nondiscriminatory reasons.

Louis, by contrast, cannot point to any record evidence demonstrating that Treschuk's concern about Louis' "history and performance" was a pretext for discrimination. *See Weathersbee*, 970 F. Supp. 2d at 434; *Evans*, 80 F.3d at 960–61; *Gbenoba*, 209 F. Supp. 2d at 576–78 (discussing standards in failure-to-promote cases where proffered reason is superior qualifications); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 658–59 n.4 (4th Cir. 2002) (King, J., concurring in part and dissenting in part) (argument over whether plaintiff possessed superior computer skills was irrelevant when the basis for not promoting the plaintiff was lack of management experience). Louis advances several arguments in an effort to raise a genuine dispute as to Treschuk's rationale, but none allows Louis' discrimination claims to survive challenge. The Court discusses each argument in turn.

### 1. Inconsistent Justifications

Louis first argues that Treschuk's reasons for not promoting Louis are inconsistent. To give rise to a finding of pretext, inconsistencies must relate to the "core substance" of the proffered reasons for failing to promote. *Propst*, 148 F. Supp. 3d at 528 (citing *Walker v. Mod-U-Kraf Homes, LLC*, 775 F.3d 202, 212 (4th Cir. 2014)). "[M]inor discrepancies or elaborative discussion will not suffice." *Id.*

The record does not support Louis' contention that Treschuk offered inconsistent explanations for Louis' non-promotion sufficient to give rise to an inference of discrimination. Louis notes that Treschuk did not explicitly mention the Regal IA investigations by name when he told Louis why he would not be promoted. But Louis agrees that Treschuk referred to performance issues at the "Town Center." *See* ECF No. 33-2 at 27 n.49; ECF 28-2 at 53–54 (Louis Dep. 212:4–214:17). Accordingly, any purported "inconsistency" arising from Treschuk using "Town Center" when referring to the Regal *at* Town Center did not involve the "core substance" of Treschuk's proffered reasons for not promoting Louis. *Propst*, 148 F. Supp. 3d at 528; *cf. Wesley v. Arlington Cty.*, 354 F. App'x 775, 782 (4th Cir. 2009) (finding inconsistent explanations probative of pretext when defendant's reasons for not promoting plaintiff were *contradicted* by testimony given by the decisionmaker); *Wise v. Gallagher Basset Servs., Inc.*, 228 F. Supp. 2d 671, 674–76 (D. Md. 2002) (although defendant offered several reasons for not promoting plaintiff, all were consistent because all concerned the same aspects of plaintiff's job performance); *Johnson v. City of Charlotte*, 229 F. Supp. 2d 488, 496 (W.D.N.C. 2002). Nor does the Court credit Louis' distinction between Louis' "performance" and "conduct," or any suggestion that the IA investigations involved the latter but not the former. *See* ECF No. 33-2 at 27. Louis has not pointed to any evidence of inconsistency sufficient to generate a triable issue of pretext on that basis.[6]

---

[6] In this regard, the Court disagrees with the EEOC's finding that Treschuk's stated reason for failing to promote Louis is "mere pretext." *See* ECF No. 33-43 at 8. The EEOC based its determination on Treschuk initially justifying his decision solely on Louis' supervisory deficiencies and not the 2011 and 2013 overbilling allegations. However, Louis admitted that Treschuk informed Louis that the Town Center "issues" were one a reason for declining promotion. ECF 28-2 at 53–54 (Louis Dep. 212:4–214:17). Nor can the Court agree that Treschuk's failure to contact Louis's direct supervisor for feedback undermines Treschuk's stated reasons for failing to promote Louis in light of the input from Department management that Treschuk *did* receive.

### 2. Racial Animus for Consideration of 2013 Regal IA

Louis next contends that the 2013 Regal IA investigation itself was motivated by racial animus and thus cannot be viewed as a legitimate non-discriminatory reason for Treshuck's decision not to promote Louis. Louis argues that he was "unfairly accused of misconduct to manufacture a baseless disciplinary action to thwart [his] future opportunities for promotion." ECF No. 33-2 at 7. However, apart from Louis' naked assertions, no record evidence supports this contention. In fact, Louis' admission to the facts underlying the 2013 charges belies this claim. Without more, Louis' contention that the 2013 investigation was itself motivated by race is the kind of impermissible "building of one inference upon another" that cannot create a genuine issue of material fact. *Beale*, 769 F.2d at 214; *cf. Hawkins*, 203 F.3d at 281 ("Hawkins attempts to frame Price's behavior in racial terms . . . [b]ut Hawkins presents no facts that tend to show this allegedly disparate treatment was due to race rather than Price's admittedly low regard for Hawkins' individual performance.").

Even if, as Louis asserts, the officer complaints giving rise to the 2013 Regal investigation were racially motivated, no evidence in the record demonstrates that the investigation itself was infected with racial animus. First, the investigation was required by Department policy. *See* ECF No. 33-16 at 7 (Rappoport Dep. 2019:12–20:5). Second, Louis, through counsel, agreed to accept the charges and took no issue with the underlying facts in support. Third, no evidence in the record demonstrates that Treschuk's ultimate determination as to the charges to pursue against Louis stemming from the 2013 investigation was racially motivated.

More importantly, even if the complaining officers were motivated to initiate the 2013 complaint because of Louis' race, they were not the decisionmakers with respect to the 2014

sergeant promotion. Accordingly, their motivations are not relevant to whether Treschuk's ultimate reasons for not promoting Louis are pretextual. *See King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003) (citing *Evans*, 80 F.3d at 960–61) (it is the decisionmaker's perception that matters); *Holley*, 846 F. Supp. 2d at 427 (conduct of employee who "was not the de jure or de facto decisionmaker" was not probative in failure-to-promote case); *id.* at 435 (conversation in which a non-decisionmaker stated that there are too many minorities did not have "evidentiary weight"). This argument, too, must fail.

### 3. Superior Qualifications

Louis next argues that his qualifications were superior to Seilhamer's, permitting an inference that Treschuk's proffered reasons for not promoting Louis were pretextual. If a plaintiff is "discernibly better qualified" than the candidate who received the promotion, the Court may infer that defendant's proffered justifications for the selection were pretext for discrimination. *See Holley*, 846 F. Supp. 2d at 438. However, "[w]hen a plaintiff asserts job qualifications that are similar or only slightly superior to those of the person eventually selected, the promotion decision remains vested in the sound business judgment of the employer." *Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 261 (4th Cir. 2006).

Louis primarily points to record evidence demonstrating that he was more experienced as an Officer in Charge ("OIC") than Seilhamer, and that Department colleagues thought he would be a better sergeant than Seilhamer. Louis provides no grounds to accord the opinions of his coworkers any weight. *See Hawkins*, 203 F.3d at 280 (non-decisionmaker coworkers' beliefs as to quality of plaintiff's work is "close to irrelevant"); *cf. King*, 328 F.3d at 149. More to the point, Seilhamer possessed the necessary qualifications for promotion to sergeant based on the Department's stated criteria. *See, e.g.*, ECF No. 28-3 at 11 (Treschuk Dep. 42:2–10) (discussing

13

feedback on both candidates from the orals board); ECF No. 33-6 at 14 (Converse Dep. 48:7–9). Seilhamer ranked only one below Louis on the eligibility list, and no record evidence demonstrates that Louis' proffered strengths were material to the promotion decision overall. ECF No. 28-3 at 11 (Treschuk Dep. at 42:14–43:14). Louis simply cannot raise a genuine issue as to pretext by effectively seeking to reweigh selection factors. *See Wise*, 228 F. Supp. 2d at 675–76; *Anderson*, 406 F.3d at 269–70, 271; *Jackson v. Winter*, 497 F. Supp. 2d 759, 768–69 (E.D. Va. 2007); *Devonish v. Napolitano*, No. CIV. WDQ-13-0108, 2014 WL 465707, at *6–7 (D. Md. Feb. 4, 2014); *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 319–20 (4th Cir. 2005). Nor may this Court substitute its own views on the wisdom of a promotion decision for that of the Department's decisionmaker. *See Hawkins*, 203 F.3d at 280, 281–82.[7] Accordingly, Louis has not generated sufficient evidence to demonstrate that the superiority of his qualifications gives rise to a genuine issue of fact as to pretext.

### 4. Racial Hostility in the Department

Louis finally argues that racial hostilities generally permeated the Department, giving rise to the inference that his non-promotion was on account of race. Although "[s]worn statements concerning past instances of racial discrimination may constitute relevant background evidence in a proceeding in which the status of a current incident is at issue," this is so where the other instances "involved the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." *Holley*, 846 F. Supp. 2d at 433–34 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 112 (2002)) (internal marks omitted). Louis' belief in general racial hostility and unfavorable opinions expressed by Department employees unrelated to Louis' non-promotion do not support a plausible inference that racial animus

---

[7] Similarly, Louis' suggestion that he should have been promoted to increase diversity in the sergeant ranks is insufficient to show pretext. This argument is simply an invitation to reweigh the stated priorities of the Department in promoting an officer to the position of sergeant.

14

motivated the adverse employment decision at issue here. Louis' "own subjective belief" that he was mistreated because of his race, "no matter how heartfelt," simply is insufficient to survive summary judgment. *Bowen v. Darby Dev. Co., Inc.*, No. CIV.A. 2:10-2509-RMG, 2012 WL 2675323, at *10 (D.S.C. Apr. 26, 2012), *report and recommendation adopted,* No. 2:10-CV-2509-RMG, 2012 WL 2675470 (D.S.C. July 6, 2012). Summary judgment on Louis' discrimination claims must be granted in Defendants' favor.

### B. Counts II, IV, and VI, Retaliation

To make out a *prima facie* case of retaliation, Louis must demonstrate that (1) he engaged in protected activity, (2) Defendants took an adverse employment action against him, and (3) there was a causal link between the two events. *See Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015). To be "materially adverse" and give rise to a retaliation claim, the employment action must be sufficiently serious to dissuade a reasonable employee from making or supporting a charge of discrimination. *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

Louis' retaliation claim is premised on the theory that the decision not to promote him was retaliation for his filing the 2013 internal harassment complaint. It is beyond dispute that not being promoted is materially adverse. However, as discussed above, Louis has failed to generate any evidence that Treschuk chose not to promote Louis for illegitimate reasons. *See Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337–38 (4th Cir. 2011); *Propst*, 148 F. Supp. 3d 528. Moreover, Louis' 2013 internal harassment complaint predated the decision on his promotion by well over a year. *Cf. Jones v. Constellation Energy Projects & Servs. Grp., Inc.*, 629 F. App'x 466, 469–70 (4th Cir. 2015) (collecting cases and declining to find a temporal connection when nine months passed between protected activity and termination). Other than the co-existence of

15

these events—Louis complaining in 2013 and not being promoted in 2014—no evidence causally connects the two. Without some evidence that Treshuck's decision not to promote Louis related at all to Louis' complaint, the retaliation claim cannot survive.

Louis also argues for the first time in his opposition to summary judgment that the unwarranted "expanding" of the 2013 Regal IA investigation to include the "Untruthful Responses" allegation also was in retaliation for his filing an internal harassment complaint. ECF No. 33-2 at 16. Because Louis did not plead this theory of retaliation in his Complaint, the Court questions whether Defendants were afforded sufficient notice to defend on this theory. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (short and plain statement of the claim must give the defendant fair notice of what the claim is and the grounds upon which it rests); *Fravel v. Ford Motor Co.*, 973 F. Supp. 2d 651, 655 (W.D. Va. 2013) (mislabeling of a proper legal theory of a claim is not grounds for dismissal, but the plaintiff's complaint must give fair notice of the claim and the grounds upon which it rests) (quoting *Grayson Fin. Am., Inc. v. Arch Specialty Ins. Co.*, 2:05 CV 461, 2006 WL 290513, at *2 (E.D. Va. Feb. 6, 2006)). That said, the claim nonetheless fails as a matter of law.

The Court shares Louis' concerns regarding the timing of the additional allegation (added one day after Louis gave notice of his intent to file his internal complaint). However, Chief Treschuk ultimately did not pursue this violation. As such, the "expansion" of the investigation to include this allegation did not affect Louis' discipline, employment status, wages, or terms of employment; it is not an "adverse" employment action sufficient to support a retaliation claim.[8] *See Yeager v. UPMC Horizon*, 698 F. Supp. 2d 523, 546–47 (W.D. Pa. 2010)

---

[8] Louis raises a similar argument regarding the "expansion" of the description of the "Conduct Unbecoming an Officer" allegation, which had been part of the 2013 Regal investigation since its inception. *See* ECF No. 33-2 at 19. The Court finds that any modification to the description of this allegation, without more, does not properly give rise to a retaliation claim here.

16

(cited by *Robinson v. G.E. Aviation*, No. 7:10-cv-00240-BR, 2012 WL 607559, at *2 (E.D.N.C. Feb. 24, 2012)); *cf. Baird v. Gotbaum*, 662 F.3d 1246, 1250 (D.C. Cir. 2011); *Pollard v. Baltimore Cty. Bd. of Educ.*, 65 F. Supp. 3d 449, 455 (D. Md. 2014); *Merrill v. McCarthy*, 184 F. Supp. 3d 221, 243 (E.D.N.C. 2016) (in general, actions that "essentially amount to criticism of an employee such as negative performance evaluations, reprimands or warnings, and counseling are alone insufficient to constitute materially adverse employment actions" unless they factor in to further discipline); *Lacasee v. Didlake, Inc.*, 194 F. Supp. 3d 494, 504 (E.D. Va. 2016), *aff'd*, No. 16-1896, 2018 WL 345064 (4th Cir. Jan 10, 2018) (collecting cases and noting that neither placing an employee on administrative leave with pay for a short time to allow investigation nor written or verbal reprimands that do not lead to further discipline constitute adverse employment actions). The Court grants summary judgment in Defendants' favor as to Louis' retaliation claims.

## C. Count VIII, Equal Protection

Count VIII of the Complaint, brought pursuant to 42 U.S.C. § 1983, alleges that Defendants violated Louis' Equal Protection rights by discriminating against him based on the same facts and theories underlying his statutory discrimination claims. *See* ECF No. 1 ¶ 139. Equal protection discrimination claims brought pursuant to § 1983 proceed under the same framework applicable to Title VII claims. *See Weathersbee*, 970 F. Supp. 2d at 430; *Beardsley v. Webb*, 30 F.3d 524, 529 (4th Cir. 1994) ("Courts may apply the standards developed in Title VII litigation to similar litigation under § 1983."). Although Defendants lodge a series of attacks on this claim, ECF No. 28-1 at 39–40, the analysis is straightforward. Because the Court already has determined that no record evidence allows a reasonable trier of fact to conclude that

Defendants' failure to promote Louis was motivated by discriminatory animus, Louis' § 1983 claim likewise fails.

## IV. CONCLUSION

Defendants' Motion for Summary Judgment is GRANTED. A separate Order follows.

| | |
|---|---|
| 3/23/2018 | /S/ |
| Date | Paula Xinis<br>United States District Judge |